IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


**MARY JANE WEST,**

        **Plaintiff,**

  vs.                                      **Civil Action 2:11-CV-448**
                                                        **Judge Marbley**
                                                        **Magistrate Judge King**


**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**


**REPORT AND RECOMMENDATION**

    This is an action instituted under the provisions of 42 U.S.C. §§ 405(g), 1383, for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income.  This matter is now before the Court on plaintiff's *Statement of Errors*, Doc. No. 13, and *Defendant's Memorandum in Opposition*, Doc. No. 16.

    Plaintiff Mary West filed her applications for benefits on February 25, 2005, alleging disability as of August 12, 2000.  *A.R.* 76-80, 345-47.  The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.  *A.R.* 13-14, 53-59, 61-62, 348-55.

    On August 27, 2009, plaintiff, represented by counsel, appeared and testified at the administrative hearing,[1] as did Paul F. Gatens,

---

[1] Plaintiff's claims were initially dismissed for failure to appear for an administrative hearing scheduled for December 5, 2007.  *A.R.* 49-52, 390-393.  When plaintiff did not respond to a notice to show cause for her failure to appear, her claims were dismissed.  *A.R.* 49-52.  Upon remand after appeal, however, an administrative hearing was held on August 27, 2009.  *A.R.* 27-31,

M.D., who testified as a medical expert, and John R. Finch, Ph.D., who testified as a vocational expert. *A.R.* 358-89.  In a decision dated December 16, 2009, the administrative law judge found that, despite plaintiff's severe impairments, she nevertheless has the residual functional capacity for a restricted range of light work.  *A.R.* 22-26. Relying on the testimony of the vocational expert, the administrative law judge also found that this residual functional capacity permitted the performance of a significant number of jobs in the national economy.  *A.R.* 25-26.  The administrative law judge therefore concluded that plaintiff was not disabled within the meaning of the Social Security Act.  *A.R.* 26.

That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 25, 2011.  *A.R.* 4-6.

Plaintiff was 46 years of age at the time the administrative law judge issued his decision.  *A.R.* 26, 76.  She has a high school education,  *A.R.* 362-63, and prior relevant work as a laundry laborer, press operator and cashier.  *A.R.* 25.  She was unemployed at the time of the August 2009 administrative hearing. *A.R.* 363-64.

By way of medical background, plaintiff presented to the emergency room in August 2000 because of pain in her right shoulder. *A.R.* 155.  X-rays of the right shoulder were unremarkable and plaintiff was diagnosed with right shoulder bursitis with impingement. *A.R.* 155.

In August 2000, Mark A. Holt, M.D., an orthopedic specialist,

---

45-48, 358-359.

evaluated plaintiff's right shoulder.  *A.R.* 182.  Plaintiff denied a particular injury to the shoulder. *A.R.* 182.  Dr. Holt diagnosed right shoulder rotator cuff tendinitis and recommended that plaintiff rest, avoid aggravating activities and begin physical therapy.  *A.R.* 182.  At a follow-up appointment on August 29, 2000, Dr. Holt reported that plaintiff "is doing worse than expected."  *A.R.* 181.  Following subsequent visits and conservative treatment, Dr. Holt reported that plaintiff had developed a frozen shoulder.  *A.R.* 174-81.  In January 2001, Dr. Holt performed surgery involving "right shoulder manipulation under anesthesia, injection glenohumeral joint."  *A.R.* 157.  Plaintiff's condition improved post-operatively, but she still reported occasional pain and tenderness.  *A.R.* 169-73.

On October 29, 2002, plaintiff sought a second opinion from David M. Jackson, M.D., an orthopedic specialist.  *A.R.* 245-245A.  Plaintiff reported that her range of motion had improved post-operatively but that she continued to experience pain that interfered with her ability to work.  *A.R.* 245.  Upon physical examination, Dr. Jackson noted subacromial crepitation on elevation with positive impingement sign, mildly restricted range of motion and some abnormal scapular motion with abduction; there was no instability.  *A.R.* 245A.  X-rays were normal.  *Id*.  Dr. Jackson concluded that plaintiff had probable impingement syndrome leading to subacromial bursitis related to repetitive work activities and a frozen shoulder with some mild residual stiffness.  *Id*.

Plaintiff continued to report right shoulder pain following cortisone injections.  *A.R.* 235-42.  On October 21, 2003, Dr. Jackson performed a right shoulder arthroscopy and subacromial decompression.

*A.R.* 234.  Plaintiff's condition improved, but she continued to complain of some pain.  *A.R.* 219-25, 227-33.

By June 2005, plaintiff complained to Dr. Jackson that her shoulder had worsened.  *A.R.* 217-18.  Dr. Jackson administered a subacromial cortisone injection and directed plaintiff to work on range of motion exercises.  *A.R.* 217.

In August 2007, Dr. Jackson examined plaintiff in connection with her Worker's Compensation claim.  *A.R.* 320-21.  He attributed plaintiff's frozen shoulder, subacromial impingement and bursitis to work injuries and commented that, although plaintiff had improved following her surgery in October 2003, "she still has significant ongoing disability with her right shoulder.  I believe she has chronic and permanent limits with the use of her right shoulder[.]"  *A.R.* 320. Upon physical examination, however, Dr. Jackson reported that plaintiff's range of motion was "near normal compared to the left, she just lacks a little bit of forward flexion."  *Id*.  There was no muscle atrophy and no point tenderness about the right shoulder.  *Id*.  Dr. Jackson characterized plaintiff's shoulder restrictions as chronic and permanent.  *A.R.* 321.

On November 26, 2008, plaintiff presented to Moundbuilders Guidance Center "due to feeling depressed for several years."  *A.R.* 313.  Plaintiff was referred to a counselor and to a hospital program so that a primary care physician could assist with her medication needs.  *Id*.

Between February and May 2009, plaintiff visited Katrina Timson, M.D., a primary care physician.  *A.R.* 283-95.  Although plaintiff reported various complaints and requested medication for depression,

4

she did not complain of right shoulder pain. *Id*. On July 22, 2009, Dr. Timson performed a physical capacity evaluation, *A.R.* 296-97, and reported, *inter alia*, no limits on plaintiff's ability to work, including no limitations on her ability to lift weight or to reach above shoulder level. *Id*.

Plaintiff testified at the administrative hearing that her right shoulder pain keeps her from working. *A.R.* 366. She rated the pain as 8 on a 10 point scale. *A.R.* 368. She does not use narcotic pain medication but does take prescription Ibuprofen. *A.R.* 368-69. She also occasionally experiences numbness and tingling from her shoulder down to her hands. *A.R.* 377-78.

Plaintiff has difficulty reaching in front, overhead or sideways with her right arm. *A.R.* 367. Reaching also causes numbness. *A.R.* 378. Accordingly to plaintiff, surgery did not help her right shoulder condition. *A.R.* 367. She performs the exercises recommended by her doctors only sometimes. *A.R.* 372.

In addition to her right shoulder, plaintiff has also suffered from depression since 2000. *A.R.* 367. When depressed, she becomes agitated, has crying spells and cannot concentrate. *Id*. Dr. Timson prescribed Prozac for the condition. *A.R.* 367-68, 379. At the time of the hearing, plaintiff had been seeing a counselor for four months. *A.R.* 379.

Plaintiff estimates that, on a typical day, she can walk approximately one block on level ground, but does not walk outside her home on a regular basis. *A.R.* 369, 372. She can stand in one place for about three hours and can sit without limit. *Id*. She can bend at the waist. *Id*. She can carry a gallon of milk, which weighs

approximately eight pounds, and can walk up and down a flight of stairs. *A.R.* 370-72. She initially testified that she can use her hands and fingers to engage in fine manipulation, but later testified that numbness and tingling in her hand and fingers make it difficult pick up and hold things. *A.R.* 278-79.

Plaintiff drives several times per week, *A.R.* 371. She has difficulty sleeping at night and must therefore nap during the day. *A.R.* 370, 373, 379-80. She has no hobbies. She does not often visit with friends or family. *A.R.* 374. She and her husband occasionally play cards or board games. *Id.*

On a typical day, plaintiff gets up around 7:30. *A.R.* 372. She can care for her personal needs. *Id*. She shares household chores with her husband. *Id*. Plaintiff can use the vacuum. *Id*. She can go grocery shopping on her own. *A.R.* 373. She watches television. *Id*. She cares for her puppy. *A.R.* 373. She goes to bed between midnight and 2:00 A.M. *A.R.* 372.

After reviewing plaintiff's medical records, Dr. Gatens, the medical expert, testified that plaintiff's main impairment was right shoulder impingement syndrome and frozen shoulder, with complaints of pain documented in the record since August 7, 2000. *A.R.* 380. Dr. Gatens also noted a normal neurologic exam and reference to left ankle pain as of February 2004 related to an old ankle fracture. *A.R.* 380-81. There was no documented impairment of plaintiff's left arm. *A.R.* 383. According to Dr. Gatens, plaintiff's impairments do not meet or equal a listed impairment. *A.R.* 381. According to Dr. Gatens, plaintiff could sit six to eight hours per day, with a change of position every two hours, and could stand and walk six to eight hours

per day, with a three to five minute break every 60 to 90 minutes. *A.R.* 381-82. Plaintiff could lift twenty pounds occasionally and ten pounds frequently. *A.R.* 382. She could use both hands for repetitive and sustained actions such as grasping, pushing, pulling and fine manipulation of objects in front of her. *Id.* Plaintiff could frequently bend at the waist, squat, stoop and crouch and could occasionally climb stairs. She could not climb ladders, scaffolding or ropes and could not engage in overhead lifting or extensive reaching or pushing with the right arm. *A.R.* 382-83. In assessing plaintiff's residual functional capacity, Dr. Gatens considered the likelihood of pain associated with the documented impairments. *A.R.* 383.

Dr. Finch, the vocational expert, was asked to assume a claimant with plaintiff's vocational profile and the exertional capacity and limitations articulated by Dr. Gatens. *A.R.* 386. In response, Dr. Finch testified that such a claimant could not perform any of plaintiff's past relevant work. *Id.* However, such a claimant could perform such light, unskilled jobs as inspector, order clerk and information clerk. *A.R.* 386-87. According to Dr. Finch, the region offers 3,000 inspector jobs, 1,300 order clerk jobs and 2,000 information clerk jobs. *Id.* Assuming the credibility of plaintiff's subjective complaints, however, such a claimant could not work because of difficulty in reaching in all directions and in handling objects. *A.R.* 387.

Upon examination by plaintiff's counsel, Dr. Finch testified that, in identifying these jobs, he relied on the reports of the United States Department of Labor and the Ohio Department of Job and

Family Services.  *A.R.* 387-88.

In his decision, the administrative law judge found that plaintiff's severe impairments consist of right shoulder impingement syndrome, frozen shoulder and status post remote left ankle fracture. *A.R.* 21.  The administrative law judge concluded that plaintiff's depression was not severe because it does not cause more than minimal limitation in her ability to perform basic mental work.  *Id*.

Relying on the testimony of Dr. Gatens, the medical expert, the administrative law judge also found that plaintiff has the residual functional capacity to perform light work except that she is able to sit for two hours at a time for a total of six to eight hours in an eight-hour workday and is able to stand and/or walk 60-90 minutes at a time, with a break for sitting for three to five minutes, for a total of six to eight hours in an eight-hour workday.  *Id*.  He also found that plaintiff can use both hands for reaching, manipulation and grasping and that she has no limits on the operation of foot controls. *Id*.  She can frequently bend, stoop and crouch and can occasionally climb stairs, but cannot climb ladders or scaffolds.  *Id*.  Plaintiff is precluded from overhead reaching or extensive reaching towards the front with her right arm, but she has no limitation in the use of her left arm.  *Id*.  Her driving is not restricted as long as no overhead or extensive reaching with the right arm is required.  *Id*.  Relying on the testimony of the vocational expert, the administrative law judge found that plaintiff is unable to perform any past relevant work as a laundry laborer, press operator or cashier,  *A.R.* 25, but that there are jobs that exist in significant numbers in the national economy that plaintiff can perform.  *Id*.  Accordingly, the administrative law

judge concluded that plaintiff is not disabled within the meaning of the Social Security Act.  *A.R.* 26.

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility.  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole.  *Kirk*, 667 F.2d at 536.  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion.  *Longworth,* 402 F.3d at 595.

In her *Statement of Errors*, plaintiff complains that "[t]he Commissioner did not carry the burden at the fifth step of the sequential evaluation in establishing that there was other work that Plaintiff could perform" and that the administrative law judge's decision was not supported by substantial evidence.  *Id*. at 1.  In

determining at the fifth step whether a claimant's impairments "prevent him or her from performing work that exists in the national economy," administrative law judges may consider "'reliable job information' available from various publications" and testimony from vocational experts as "sources of occupational evidence[.]"  S.S.R. 00-4p, 2000 SSR LEXIS 8 at *3 (S.S.A. Dec. 4, 2000).  These publications include the Dictionary of Occupational Titles, published by the Department of Labor, which "includes information about jobs (classified by their exertional and skill requirements) that exist in the national economy."  S.S.R. 00-4p, 2000 SSR LEXIS 8 at *1; 20 C.F.R. §§ 404.1569, 416.969.  At times, the testimony of a vocational expert may conflict with information contained in the Dictionary of Occupational Titles.  *See*, *e.g.*, *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603 (6th Cir. 2009).  Neither type of evidence, however, "automatically 'trumps' the other when there is a conflict."  S.S.R. 00-4p, 2000 SSR LEXIS 8 at *5.  Therefore, "[i]n an effort to insure that such actual or apparent conflicts are addressed, the Social Security Administration has imposed an affirmative duty on [administrative law judges] to ask the "vocational experts] if the evidence that he or she has provided 'conflicts with [the] information provided in the [Dictionary of Occupational Titles].'"  *Lindsley*, 560 F.3d at 603 (quoting S.S.R. 00-4p, 2000 SSR LEXIS 8 at *9).  Administrative law judges must also "obtain a reasonable explanation for ... apparent conflict[s]" if the vocational expert's testimony "appears to conflict with the DOT."  2000 SSR LEXIS 8 at *9.

In the case presently before the Court, Dr. Finch, the vocational expert, testified that a claimant with the residual functional

capacity for a limited range of light work could perform such jobs as inspector, order clerk and information clerk.  In her *Statement of Errors*, plaintiff complains that the administrative law judge erred in relying on this testimony because the Dictionary of Occupational Titles includes "several" inspector jobs that require medium strength. *Statement of Errors*, p. 5.  Therefore, plaintiff argues, there is no evidence of the actual number of light inspector jobs available to her.  *Id*.  Second, plaintiff contends that the job of order clerk is beyond plaintiff's "level of education and skill" because some of the order clerk positions detailed in the Dictionary of Occupational Titles are semi-skilled and, plaintiff represents, some order clerk positions "may include entering data into a computer."  *Id*. at 6. Finally, plaintiff argues that the job of information clerk is beyond plaintiff's residual functional capacity because the Dictionary of Occupational Titles identifies some of those positions as requiring medium exertion and are skilled.  *Id*.  Accordingly, plaintiff takes the position that substantial evidence does not support the administrative law judge's decision because there is no evidence in the record that a significant number of jobs within plaintiff's residual functional capacity exist in the national economy.  *Id*. at 6-7.

    Plaintiff's arguments are not well-taken.  When given the opportunity to cross-examine Dr. Finch during the administrative hearing, plaintiff never challenged Dr. Finch's conclusions or otherwise identified a possible conflict between Dr. Finch's testimony and the Dictionary of Occupational Titles.  *A.R.* 387-88.

    Q:   Okay.  You gave examples of certain jobs that the

```
           claimant--

   A:      Yes.

   Q:      —- could perform based on a certain hypothetical.

   A:      Yes.

   Q:      What was the source of that information, where did you
           come up with those numbers?

   A:      These numbers are drawn from the United States
           Department of Labor reports.

   Q:      Okay.  Can you tell me specifically what publication
           it's from?

   A:      Yes, I draw all my numbers from the United States
           Department of Labor.

   Q:      Is there a certain edition of that?

   A:      It's all available on the website.

   Q:      Is that where you found it?

   A:      Yes.  In addition you find local numbers through the
           Ohio Department of Job and Family Services through
           their data collection of employment figures.

   ATTY: That's all the questions.
```

*Id*. The administrative law judge understood the vocational expert's testimony as "consistent with the information found in the *Dictionary of Occupational Titles* (DOT) and its companion publication, the *Selected Characteristics of Occupations* (SCO) . . . ." A.R. 25. The administrative law judge had no additional duty to further interrogate the vocational expert or "to conduct an independent investigation into the testimony of witnesses to determine if they are correct." *See Lindsley*, 560 F.3d at 606 (quoting *Martin v. Comm'r*, No. 04-4551, 170 F. App'x 369, 374 (6th Cir. Mar. 1, 2006)).  Plaintiff had the opportunity, through her counsel, to challenge the accuracy and reliability of the testimony of the vocational expert, to make further

inquiry of Dr. Finch and to present evidence of a conflict between Dr. Finch's testimony and the statistics provided by the Department of Labor. *Beinlich v. Comm'r*, No. 08-4500, 345 Fed. App'x 163, at *168-69 (6th Cir. Sept. 9, 2009) (stating that plaintiff's counsel had the obligation to "bring out any conflicts with the" Dictionary of Occupational Titles). Plaintiff's failure to do so will not now provide a basis for relief. *Id*. *Cf. Hammond v. Comm'r of Soc. Sec.*, 116 F.3d 1480 (table), 1997 U.S. App. LEXIS 14906, at *7 (6th Cir. June 18, 1997) (stating that plaintiff waived argument objecting to jobs identified by the vocational expert where plaintiff failed to raise it during the administrative hearing); *Dantzer v. Comm'r of Soc. Sec.*, No. 3:09CV2198, 2011 U.S. Dist. LEXIS 36433, at *33-34 (N.D. Ohio Jan. 4, 2011) ("Failure to challenge the basis of the VE's testimony at the administrative hearing constitutes a waiver of the issue in the district court.").

Moreover, even if a conflict between Dr. Finch's testimony and the Department of Labor's Dictionary of Occupational Titles existed, plaintiff's arguments are nevertheless unavailing. The Dictionary of Occupational Titles does not automatically trump the testimony of a vocational expert. *See* S.S.R. 00-4p, 2000 SSR LEXIS 8 at *5. Indeed, "the social security regulations do not require the Secretary or the [vocational] expert to rely on classifications in the *Dictionary of Occupational Titles*." *Conn v. Sec'y of Health and Human Servs.*, 51 F.3d 607, (6th Cir. Feb. 6, 1995) (citing 20 C.F.R. § 404.1566(d)). *See also Wright v. Massanari*, *Acting Comm'r of Soc. Sec'y*, 321 F.3d 611, 616 (6th Cir. 2003) (same). Here, Dr. Finch testified to a significant number of jobs in the regional economy that plaintiff

could perform, and that testimony provides substantial evidence supporting the Commissioner's decision.  *See*, *e.g.*, *Burbo v. Comm'r*, No. 10-2016, 2011 U.S. App. LEXIS 26143, at *16-18 (6th Cir. Sept. 21, 2011).  Under these circumstances, the Court concludes that the decision of the Commissioner must be affirmed.

It is therefore **RECOMMENDED** that the decision of the Commissioner be affirmed and that this action be dismissed.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to de novo review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


August 2, 2012                              *s/Norah McCann King*
                                              Norah M<sup>c</sup>Cann King
                                         United States Magistrate Judge